IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF IOWA
CEDAR RAPIDS DIVISION

TARA C. GARCIA,

    Plaintiff,

vs.

MICHAEL J. ASTRUE,
Commissioner of Social Security,

    Defendant.

No. C10-0127

RULING ON JUDICIAL REVIEW

TABLE OF CONTENTS

I. INTRODUCTION . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 2

II. PROCEDURAL BACKGROUND . . . . . . . . . . . . . . . . . . . . . . . . . . 2

III. PRINCIPLES OF REVIEW . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 3

IV. FACTS . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 5
    A. Garcia's Education and Employment Background . . . . . . . . . . . . . 5
    B. Administrative Hearing Testimony . . . . . . . . . . . . . . . . . . . . . 5
        1. Garcia's Testimony . . . . . . . . . . . . . . . . . . . . . . . . 5
        2. Johnny Garcia's Testimony . . . . . . . . . . . . . . . . . . . 6
        3. Vocational Expert Testimony . . . . . . . . . . . . . . . . . . 6
    C. Garcia's Medical History . . . . . . . . . . . . . . . . . . . . . . . . . . 7

V. CONCLUSIONS OF LAW . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 9
    A. ALJ's Disability Determination . . . . . . . . . . . . . . . . . . . . . . 9
    B. Objections Raised by Claimant . . . . . . . . . . . . . . . . . . . . . . 11
        1. Medical Equivalence to Listing 12.05C . . . . . . . . . . . . . 11
        2. Physician's Assistant Holmes' Opinions . . . . . . . . . . . . 14
        3. RFC Assessment . . . . . . . . . . . . . . . . . . . . . . . . 16

VI. CONCLUSION . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 18

VII. ORDER . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 18

## *I. INTRODUCTION*

This matter comes before the Court on the Complaint (docket number 3) filed by Plaintiff Tara C. Garcia on October 21, 2010, requesting judicial review of the Social Security Commissioner's decision to deny her applications for Title II disability insurance benefits and Title XVI supplemental security income ("SSI") benefits. Garcia asks the Court to reverse the decision of the Social Security Commissioner ("Commissioner") and order the Commissioner to provide her disability insurance and SSI benefits. In the alternative, Garcia requests the Court to remand this matter for further proceedings.

## *II. PROCEDURAL BACKGROUND*

On December 16, 2005, Garcia applied for both disability insurance and SSI benefits. In her application for disability insurance benefits, Garcia alleged an inability to work since January 15, 2001. In her application for SSI benefits, she alleged an inability to work since December 1, 2003. In both of her applications, she indicated that she was unable to work due to major depression, social phobia, attention deficit hyperactivity disorder, and learning disability. Garcia's applications were denied on January 20, 2006. On June 26, 2006, her applications were denied on reconsideration. On August 6, 2006, Garcia requested an administrative hearing before an Administrative Law Judge ("ALJ"). On October 9, 2008, Garcia appeared via video conference with her attorney before ALJ John E. Sandbothe for an administrative hearing.[1] Garcia, Johnny J. Garcia, her husband, and vocational expert Julie Svec testified at the hearing. In a decision dated November 13, 2008, the ALJ denied Garcia's claims. The ALJ determined that Garcia was not disabled and not entitled to disability insurance or SSI benefits. Garcia appealed the ALJ's decision. On August 16, 2010, the Appeals Council denied Garcia's request for review. Consequently, the ALJ's November 13, 2008 decision was adopted as the Commissioner's final decision.

---

[1] On April 10, 2008, Garcia appeared before ALJ Sandbothe for an administrative hearing, but requested a continuance in order to obtain counsel.

2

On October 21, 2010, Garcia filed this action for judicial review. The Commissioner filed an answer on February 24, 2011. On March 28, 2011 Garcia filed a brief arguing that the ALJ failed to: (1) address whether her impairments equaled Listing 12.05C; (2) properly consider the opinions of Physician's Assistant Karl Holmes; and (3) make a comprehensive individualized assessment of her residual functional capacity ("RFC"). On May 20, 2011, the Commissioner filed a responsive brief arguing that the ALJ's decision was correct and asking the Court to affirm the ALJ's decision. On May 31, 2011, Garcia filed a reply brief. On January 5, 2011, both parties consented to proceed before a magistrate judge in this matter pursuant to the provisions set forth in 28 U.S.C. § 636(c).

### III. PRINCIPLES OF REVIEW

Title 42, United States Code, Section 405(g) provides that the Commissioner's final determination following an administrative hearing not to award disability insurance benefits is subject to judicial review. 42 U.S.C. § 405(g). Pursuant to 42 U.S.C. § 1383(c)(3), the Commissioner's final determination after an administrative hearing not to award SSI benefits is subject to judicial review to the same extent as provided in 42 U.S.C. § 405(g). 42 U.S.C. § 1383(c)(3). 42 U.S.C. § 405(g) provides the Court with the power to: "[E]nter . . . a judgment affirming, modifying, or reversing the decision of the Commissioner . . . with or without remanding the cause for a rehearing." 42 U.S.C. § 405(g). "The findings of the Commissioner . . . as to any fact, if supported by substantial evidence, shall be conclusive . . ." *Id.*

The Court will "affirm the ALJ's decision if it is supported by substantial evidence on the record as a whole." *Gates v. Astrue*, 627 F.3d 1080, 1082 (8th Cir. 2010) (citation omitted). Evidence is "substantial evidence" if a reasonable person would find it adequate to support the ALJ's determination. *Id.* (citing *Guilliams v. Barnhart*, 393 F.3d 798, 801 (8th Cir. 2005)); *see also Wildman v. Astrue*, 596 F.3d 959, 963-64 (8th Cir. 2010) ("'Substantial evidence is less than a preponderance, but is enough that a reasonable mind

3

would find it adequate to support the Commissioner's conclusion.' *McKinney v. Apfel*, 228 F.3d 860, 863 (8th Cir. 2000).").

In determining whether the ALJ's decision meets this standard, the Court considers "all of the evidence that was before the ALJ, but it [does] not re-weigh the evidence." *Vester v. Barnhart*, 416 F.3d 886, 889 (8th Cir. 2005) (citation omitted). The Court not only considers the evidence which supports the ALJ's decision, but also the evidence that detracts from his or her decision. *Moore v. Astrue*, 623 F.3d 599, 602 (8th Cir. 2010); *see also Cox v. Astrue*, 495 F.3d 614, 617 (8th Cir. 2007) (Review of an ALJ's decision "extends beyond examining the record to find substantial evidence in support of the ALJ's decision; [the court must also] consider evidence in the record that fairly detracts from that decision."). In *Culbertson v. Shalala*, 30 F.3d 934, 939 (8th Cir. 1994), the Eighth Circuit Court of Appeals explained this standard as follows:

> This standard is 'something less than the weight of the evidence and it allows for the possibility of drawing two inconsistent conclusions, thus it embodies a zone of choice within which the [Commissioner] may decide to grant or deny benefits without being subject to reversal on appeal.'

*Id.* (quoting *Turley v. Sullivan*, 939 F.2d 524, 528 (8th Cir. 1991), in turn quoting *Bland v. Bowen,* 861 F.2d 533, 535 (8th Cir. 1988)). In *Casey v. Astrue*, 503 F.3d 687 (8th Cir. 2007), the Eighth Circuit further explained that a court "will not disturb the denial of benefits so long as the ALJ's decision falls within the available 'zone of choice.'" *Id.* at 691 (citations omitted). "A decision is not outside that 'zone of choice' simply because [a court] may have reached a different conclusion had [the court] been the fact finder in the first instance." *Hacker v. Barnhart*, 459 F.3d 934, 936 (8th Cir. 2006). Therefore, "even if inconsistent conclusions may be drawn from the evidence, the agency's decision will be upheld if it is supported by substantial evidence on the record as a whole." *Guilliams*, 393 F.3d at 801 (citing *Chamberlain v. Shalala*, 47 F.3d 1489, 1493 (8th Cir. 1995)); *see also Wildman*, 596 F.3d at 964 ("If substantial evidence supports the ALJ's

decision, we will not reverse the decision merely because substantial evidence would have also supported a contrary outcome, or because we would have decided differently."); *Moore v. Astrue*, 572 F.3d 520, 522 (8th Cir. 2009) ("'If there is substantial evidence to support the Commissioner's conclusion, we may not reverse even though there may also be substantial evidence to support the opposite conclusion.' *Clay v. Barnhart*, 417 F.3d 922, 928 (8th Cir. 2005).").

## IV. FACTS

### A. Garcia's Education and Employment Background

Garcia was born in 1977. She completed 8th grade, but then dropped out in the middle of her 9th grade year. While in school, Garcia was required to take special education classes. At the start of her 9th grade year, Garcia's reading skills were screened to be at the early third grade level. Specifically, she struggled with words of more than two syllables. Additionally, Garcia's math skills were estimated at the fifth grade level. Particularly, she was unable to complete problems that included fractions and decimals and struggled with measurement terms. When she was 15 years old, a Weschler Adult Intelligence Scale-III test was administered to Garcia. She achieved a full scale IQ score of 72, verbal IQ score of 67, and performance IQ score of 81.

The record contains an earnings summary report for Garcia. The summary report covers Garcia's employment history from 1990 through 2006. From 1994 to 2002, she earned between $164.80 (1997) and $19,502.83 (2000). Garcia stopped earning income in 2003.

### B. Administrative Hearing Testimony

#### 1. Garcia's Testimony

At the administrative hearing, Garcia testified that she has difficulties with reading, comprehension, and mathematics. She stated that she was seeing doctors for depression and anxiety and that her depression started after having a stillborn baby in 2001. She indicated that she has had trouble focusing throughout her life and has difficulty being

inside a store when people are around. She testified that she is not the primary caretaker of her kids, but stated that she cooks, does laundry, cleans the house, and gets her kids off to school without problems. According to Garcia, she used to be outgoing, but now has problems with social interaction. In her view, she can hold a job as long as she is not around a lot of people and doesn't have to talk or interact with a lot of people. Although Garcia shies away from social interaction with unfamiliar people, she still socializes with her family.

### 2.  *Johnny Garcia's Testimony*

Garcia's husband, Johnny Garcia, also testified at the hearing. He indicated that Garcia is pretty depressed most of the time. He stated that she doesn't clean the house or do "what normal people do." He testified that Garcia starts some things but never finishes them and sometimes lets the kids do whatever they want instead of sticking to a routine. He further testified that Garcia had trouble filling out and understanding the Social Security applications and that he helped her with them. He also indicated that Garcia doesn't understand finances and is not good at counting change. He stated that she is depressed and lazy and lets herself go a lot of the time. He testified that she is "real uncomfortable" around people she is not familiar with, and she usually doesn't go to the store by herself.

### 3.  *Vocational Expert Testimony*

At the hearing, the ALJ provided vocational expert Julie Svec with a hypothetical for an individual with: "no physical limitations to speak of really. I would limit her to simple, routine, repetitive work, no contact with the public, regular." (Administrative Record at 380.) The vocational expert testified that under such limitations, Garcia could perform her past work as a (1) cook's helper and (2) flagger. The ALJ asked the vocational expert a second hypothetical which was identical to the first hypothetical, except that "in this instance, add slow pace for up to one-third of the day." The vocational expert testified that under such limitations, Garcia would be precluded from competitive employment.

### C. *Garcia's Medical History*

On September 12, 2005, Garcia met with Dr. Paul Sundell. Dr. Sundell administered the Weschler Adult Intelligence Scale-III test. Garcia achieved a full scale IQ score of 78, verbal IQ score of 72, and performance IQ score of 89. Dr. Sundell diagnosed Garcia with major depressive disorder, social phobia, attention deficit disorder, and learning problems. Dr. Sundell concluded that Garcia is inhibited in most social settings; struggles to solve problems using numbers; has poor attention and concentration skills; and has somewhat limited reading ability and comprehension. Dr. Sundell assessed Garcia with a GAF score of 60.

Between September 6, 2005 and December 2, 2005, Garcia met with Dr. Carlos Castillo on four occasions. She was referred to Dr. Castillo by Physician Assistant Karl Holmes. On her first visit, Dr. Castillo assessed Garcia with a GAF score of 60. Throughout her next three visits, Dr. Castillo assessed her cognition and memory as good, insight/judgment as good, and mood as medium. Furthermore, Dr. Castillo noted that Garcia did not exhibit concentration/memory problems on her third and fourth visits. Dr. Castillo diagnosed her with social anxiety disorder, depression and attention deficit disorder. Additionally, Dr. Castillo noted that Garcia had problems with reading, writing, and cognition.

On January 17, 2006, Dr. Sandra Davis assessed Garcia's limitations to determine her disability under the Social Security Act. On June 16, 2006, Dr. John Garfield completed the same assessment and agreed with Dr. Davis's conclusions. Under Listing 12.02, both diagnosed Garcia with attention deficit disorder and borderline intellectual functioning, but determined that these impairments did not satisfy the diagnostic criteria of 12.02. Under Listing 12.04, both diagnosed Garcia with major depressive disorder, but determined that these impairments did not satisfy the diagnostic criteria of 12.04. Under Listing 12.06, both assessed Garcia as having generalized persistent anxiety accompanied by motor tension, autonomic hyperactivity, and apprehensive expectation. Additionally,

both believed that Garcia's anxiety was evidenced by a "persistent irrational fear of a specific object, activity, or situation which resulted in a compelling desire to avoid the dreaded object, activity, or situation." Lastly, neither doctor believed Garcia's conditions met or equaled mental retardation under Listing 12.05.

Both doctors assessed Garcia as being "not significantly limited" or "moderately limited" in her "understanding and memory," "sustained concentration and persistence," "social interaction," and "adaptation" abilities. Both believed Garcia did not show evidence to establish the "B" criteria of the Listings, concluding she has only mild restriction of activities of daily living; moderate difficulties in maintaining social functioning; moderate difficulties in maintaining concentration, persistence, or pace; and no episodes of extended decompensation. Additionally, both doctors concluded that Garcia did not show evidence to establish the "C" criteria of the Listings.

Furthermore, Dr. Davis completed a functional capacity assessment of Garcia. Dr. Davis noted that Garcia "would have trouble dealing with more detailed tasks . . . sustaining attention and concentration for an extended period . . . [and] interacting with unfamiliar people, particularly in groups, due to social discomfort."[2] Furthermore, Garcia "does not manage change or stress well."[3] Dr. Davis stated that Garcia's daily activities included "regular independent self-care as well as care of her 3 children. She prepares daily meals . . . cleans, does dishes . . . completes laundry . . . drives and shops." Dr. Davis concluded that Garcia "has some moderate work-related limitations" and "she appears to be improving symptomatically."[4]

On April 8, 2008, Physician's Assistant Karl Holmes assessed Garcia's limitations. He found that Garcia had moderate limitations to all her "understanding and memory" abilities. Additionally, he found that Garcia had moderate limitations to all but one of her

---

[2] *See* Administrative Record at 304.

[3] *Id.*

[4] *Id.*

8

"sustained concentration and persistence" abilities. Holmes assessed Garcia as having marked limitations to her "ability to maintain attention and concentration for extended periods of time."[5] Additionally, Holmes assessed Garcia as having no greater than moderate limitations to "social interaction" and "adaptation" abilities. However, later in his assessment, Holmes stated that Garcia seldom experiences "pain or other symptoms severe enough to interfere with attention and concentration."[6] Furthermore, Holmes stated that Garcia was "capable of low stress jobs."

Garcia met with Dr. Dick Socwell or Dr. Douglas Jones during six sessions from May 21, 2008 to September 4, 2008. At her last session, Dr. Jones diagnosed Garcia with generalized social phobia and generalized anxiety disorder. Dr. Jones noted that Garcia "rated her mood a 6 out of 10," her "concentration is all right," she "is able to enjoy things," her "affect is very slightly affected," and she "contracts for safety of self and others."[7] Dr. Jones assessed Garcia with a GAF score of 55/60. Through her sessions, Dr. Socwell and Dr. Jones did not assess Garcia with a GAF score lower than 55.

## V. CONCLUSIONS OF LAW

### A. ALJ's Disability Determination

The ALJ determined that Garcia was not disabled under the Social Security Act. Specifically, the ALJ determined that although Garcia had severe impairments, they did not significantly limit her functioning and Garcia is able to perform her past relevant work as a flagger within her RFC. In making this determination, the ALJ was required to complete the five-step sequential test provided in the social security regulations. *See* 20 C.F.R. §§ 404.1520(a)-(g), 416.920(a)-(g); *Bowen v. Yuckert*, 482 U.S. 137, 140-42 (1987); *Hurd v. Astrue*, 621 F.3d 734, 738 (8th Cir. 2010); *Kluesner v. Astrue,* 607 F.3d 533, 536 (8th Cir. 2010). The five steps an ALJ must consider are:

---

[5] *Id.* at 247.

[6] *Id.* at 251.

[7] *Id.* at 226.

> (1) whether the claimant is currently engaged in any substantial gainful activity; (2) whether the claimant has a severe impairment; (3) whether the impairment meets or equals an impairment listed in 20 C.F.R. Pt. 404, Subpt. P, App. 1 ("Appendix"); (4) whether the claimant can return to [his or] her past relevant work; and (5) whether the claimant can adjust to other work in the national economy.

*Moore*, 572 F.3d at 523 (citing 20 C.F.R. § 404.1520(a)(4)(i)-(v)). "If a claimant fails to meet the criteria at any step in the evaluation of disability, the process ends and the claimant is determined to be not disabled." *Pelkey v. Barnhart*, 433 F.3d 575, 577 (8th Cir. 2006) (citing *Goff v. Barnhart*, 421 F.3d 785, 790 (8th Cir. 2005), in turn quoting *Eichelberger v. Barnhart*, 390 F.3d 584, 590-91 (8th Cir. 2004)).

In order to establish a disability claim, "[t]he claimant bears the burden of demonstrating an inability to return to [his or] her past relevant work." *Pate-Fires v. Astrue*, 564 F.3d 935, 942 (8th Cir. 2009) (citing *Steed v. Astrue*, 524 F.3d 872, 875 n.3 (8th Cir. 2008)). If the claimant meets this burden, the burden of proof then shifts to the Commissioner to "show [that] the claimant is capable of performing other work." *Id.* In order to show that a claimant is capable of performing other work, the Commissioner must demonstrate that the claimant retains the residual functional capacity ("RFC") to perform a significant number of other jobs in the national economy that are consistent with claimant's impairments and vocational factors such as age, education, and work experience. *Beckley v. Apfel*, 152 F.3d 1056, 1059 (8th Cir. 1998) (citing *Reed v. Sullivan,* 988 F.2d 812, 815 (8th Cir. 1993)). The RFC is the most an individual can do despite the combined effect of all of his or her credible limitations. 20 C.F.R. §§ 404.1545, 416.945. "'It is the ALJ's responsibility to determine [a] claimant's RFC based on all the relevant evidence, including medical records, observations of treating physicians and others, and [the] claimant's own description of her limitations.'" *Jones v. Astrue*, 619 F.3d 963, 971 (8th Cir. 2010) (quoting *Page v. Astrue*, 484 F.3d 1040, 1043 (8th Cir. 2007)); 20 C.F.R. §§ 404.1545, 416.945.

The ALJ applied the first step of the analysis and determined that Garcia had not engaged in substantial gainful activity since January 15, 2001. At the second step, the ALJ concluded from the medical evidence that Garcia had the following severe combination of impairments: depression, social phobia, learning disabilities, and attention deficit hyperactivity disorder. At the third step, the ALJ found that Garcia did not have an impairment or combination of impairments listed in 20 C.F.R. Pt. 404, Subpt. P, App. 1. At the fourth step, the ALJ determined Garcia's RFC as follows:

> [Garcia] has the residual functional capacity to perform to perform a full range of work at the light exertional level but with the following nonextertional limitations: limited to simple routine repetitive work with no contact with the public and work at a regular pace.

(Administrative Record at 19.) Also at the fourth step, the ALJ determined that Garcia could perform her past relevant work as a flagger. Therefore, the ALJ concluded that Garcia was not disabled as defined in the Social Security Act.

### B. Objections Raised by Claimant

Garcia argues that the ALJ erred in three respects. First, Garcia argues that the ALJ failed to address whether her impairments equaled Listing 12.05C. Second, Garcia argues that the ALJ failed to properly consider the opinions of Physician's Assistant Karl Holmes. Lastly, Garcia argues that the ALJ failed to make a comprehensive individualized assessment of her RFC.

#### 1. Medical Equivalence to Listing 12.05C

Garcia concedes that she does not meet the requirements of Listing 12.05C, but argues that the ALJ erred because he did not address whether her impairments equaled Listing 12.05C. The Commissioner argues that the ALJ considered and determined whether Garcia's impairments equaled Listing 12.05C. Additionally, the Commissioner argues that Garcia cannot show that she equals Listing 12.05C.

In *Shontos v. Barnhart*, 328 F.3d 418 (8th Cir. 2003), the Eighth Circuit determined equivalence using the Program Operations Manual System ("POMS"). POMS

contained the Commissioner's guidelines for determining medical equivalence for mental retardation under Listing 12.05C. The applicable part of the guidelines states:

> Listing 12.05 is based on a combination of an IQ score with an additional significant mental or physical impairment. The criteria of this paragraph are such that a medical equivalence determination would very rarely be required. However, slightly higher IQ's (e.g. 70-75) in the presence of other physical or mental disorders that impose additional and significant work-related limitation or function may support an equivalence determination. It should be noted that generally the higher the IQ, the less likely medical equivalence in combination with another physical or mental impairment(s) can be found.

POMS § DI 24515.056. The Eighth Circuit found that "[a]lthough POMS guidelines do not have legal force, and do not bind the Commissioner; this court has instructed that an ALJ should consider the POMS guidelines." *Shontos*, 328 F.3d at 424. (citing *Berger v. Apfel*, 200 F.3d 1157, 1161 (8th Cir. 2000); *List v. Apfel*, 169 F.3d 1148, 1150 (8th Cir. 1999)).

Doctors diagnosed Garcia with borderline intellectual functioning, exhibiting below-average education, and limited reading comprehension. Garcia's most recent IQ scores indicate she has a verbal IQ score of 72, a performance IQ score of 89, and a full IQ score of 78. These scores were tabulated in 2005. Clearly, Garcia does not meet the first requirement of Listing 12.05C, as none of her IQ scores from 2005 are between 60 and 70. Garcia's full and performance IQ scores (78 and 89) are considerably higher than the POMS range (70-75). Only Garcia's verbal IQ score (72) falls within the POMS range. Therefore, according to the POMS guidelines, medical equivalence is less likely to be found here because "generally the higher the IQ, the less likely medical equivalence in combination with other physical or mental impairment(s) can be found." *See* POMS § DI 24515.056.

While Garcia has been diagnosed with other mental disorders – including attention deficit disorder, major depressive disorder, depressive disorder NOS, anxiety related

disorder, general anxiety disorder, social phobia, and learning problems – there is no evidence that these mental disorders have caused any significant work-related limitations. Karl Holmes, a physician's assistant, opined that Garcia's disorders markedly affected her "ability to maintain attention and concentration for extended periods of time." However, no other doctor's report in the record makes such a finding. Significantly, Dr. Castillo, the doctor Holmes works for as a physician assistant, found that Garcia did not exhibit concentration/memory problems.[8] Furthermore, Dr. Garfield and Dr. Davis found that Garcia's disorders, at most, moderately affect or limit her functioning.[9] Moreover, later in his assessment, Holmes stated that Garcia seldom experiences "pain or other symptoms severe enough to interfere with attention and concentration."[10]

Additionally, Garcia's GAF scores indicate only moderate difficulty in functioning. In 2008, Dr. Socwell or Dr. Jones assessed Garcia six times with GAF scores ranging from 55 and 60. Furthermore, Dr. Sundell and Castillo assessed Garcia with a GAF score of 60 in 2005. A GAF score between 51 and 60 indicates, "moderate symptoms . . . or moderate difficulty in social, occupational, or school functioning."[11]

Having reviewed the entire record, the Court finds that the ALJ properly determined that Garcia had moderate and, therefore, not significant limitations under Listing 12.05C. Because the ALJ properly determined that Garcia did not have significant limitations under Listing 12.05C, the ALJ did not err in finding that Garcia's borderline intellectual functioning combined with her other mental impairments, were not medically equivalent to Listing 12.05C. *See* POMS § DI 24515.056; *Shontos v. Barnhart*, 323 F.3d 418 (8th Cir. 2003)(discussing medical equivalence for Listing 12.05C). Because the ALJ's decision is supported by substantial evidence on this issue, the court finds that his

---

[8] *Id.* at 283.

[9] *Id.* at 303-03; *Id.* at 256-57.

[10] *Id.* at 87.

[11] *Fires v. Astrue*, 564 F.3d 935, 938 n.3 (8th Cir. 2009).

determination shall be affirmed. *See Shantos*, 627 F.3d at 1092; *see also Guilliams*, 393 F.3d at 801 ("[E]ven if inconsistent conclusions may be drawn from the evidence, the agency's decision will be upheld if it is supported by substantial evidence on the record as a whole.").

### 2. *Physician's Assistant Holmes' Opinions*

Garcia argues that the ALJ failed to properly consider the opinions of Physician's Assistant Karl Holmes. Holmes, as a physician's assistant, is not classified as an "acceptable medical source" under the Social Security Regulations. Even though Holmes is not an "acceptable medical source," the Social Security Administration ("SSA") requires an ALJ to consider such opinions in making a final disability determination. On August 9, 2006, the SSA issued Social Security Ruling 06-03p. The purpose of Ruling 06-03p was to clarify how the SSA considers opinions from sources not classified as "acceptable medical sources." *See Sloan v. Astrue*, 499 F.3d 883, 888 (8th Cir. 2007) (discussing SSR 06-03p). Ruling 06-03p provides that when considering the opinion of a source that is classified as a "not acceptable medical source," such as a physician's assistant, "it would be appropriate to consider such factors as the nature and extent of the relationship between the source and the individual, the source's qualifications, the source's area of specialty or expertise, the degree to which the source presents relevant evidence to support his or her opinion, whether the opinion is consistent with other evidence, and any other factors that tend to support or refute the opinion." SSR 06-03p. Furthermore, in discussing SSR 06-03p, the Eighth Circuit Court of Appeals, in *Sloan*, pointed out:

> Information from these 'other sources' cannot establish the existence of a medically determinable impairment, according to SSR 06-3p. Instead, there must be evidence from an 'acceptable medical source' for this purpose. However, information from such 'other sources' may be based on special knowledge of the individual and may provide insight into the severity of the impairment(s) and how it affects the individual's ability to function.

14

*Sloan*, 499 F.3d at 888 (quoting SSR 06-03p). In determining the weight afforded to "other medical evidence," an "ALJ has more discretion and is permitted to consider any inconsistencies found within the record." *Raney v. Barnhart*, 396 F.3d 1007, 1010 (8th Cir. 2005) (citation omitted).

The ALJ gave little weight to Holmes's opinion that Garcia's disorders markedly affected her "ability to maintain attention and concentration for extended periods of time."[12] Specifically in his decision, the ALJ determined that:

> Although there was evidence in the record in a medical source statement that the claimant's ability to maintain attention and concentration for extended periods was severely affected, this opinion was not provided by a treating physician but rather by Karl M. Holmes, P.A.-C, a physician's assistant. A physician's assistant is a non-acceptable medical source. When asked on the report for the qualifications of the mental health professional, Mr. Homes wrote 'this patient has seen Dr. Paul Sundell and Dr. Castillo at Cedar Center in Cedar Rapids.' As this medical source statement was completed by Mr. Holmes and not Dr. Sundell or Dr. Castillo, the undersigned gives the opinion little weight. Furthermore, in a medical report completed by Mr. Holmes for the claimant in anticipation of this adjudication, only three of the five pages were submitted into evidence. As this report was incomplete and again completed by Mr. Holmes, the opinion is also given little weight.

(Administrative Record at 22).

Although the ALJ could have more clearly stated his reasons for granting little weight to Holmes' opinions, he did not err when giving Holmes' opinion little weight. "The ALJ may discount or disregard such an opinion if other medical assessments are supported by superior medical evidence, or if the treating physician has offered inconsistent opinions." *Hogan v. Apfel*, 239 F. 3d 958, 961 (8th Cir. 2000); *see also Travis v. Astrue*, 477 F.3d 1037, 1041 (8th Cir. 2007) (If the doctor's opinion is

---

[12] *Id.* at 21.

'inconsistent with or contrary to the medical evidence as a whole, the ALJ can accord it less weight.' *Edwards v. Barnhart*, 314 F.3d 964, 967 (8th Cir. 2003)). Here, as mentioned previously, no other doctor's report made the same finding as Holmes, including Dr. Sundell and Dr. Castillo, the doctors Holmes works for as a physician assistant. Furthermore, Holmes offered inconsistent opinions when he later stated that Garcia seldom experiences "pain or other symptoms severe enough to interfere with attention and concentration."[13]

Having reviewed the entire record, the Court finds that the ALJ properly considered Holmes's opinions in accordance with SSR 06-03p. Accordingly, even if inconsistent conclusions could be drawn on this issue, the Court upholds the conclusions of the ALJ because they are supported by substantial evidence on the record as a whole. *Guilliams*, 393 F.3d at 801.

### 3. RFC Assessment

Garcia argues that the ALJ failed to make a comprehensive individualized assessment of her RFC. Specifically, Garcia argues that the ALJ left out some of the limitations provided by Dr. Davis and Dr. Garfield gave. The limitations allegedly left out were: "work in coordination with or proximity to others without being distracted by them," "accept instructions and respond appropriately to criticism from supervisors," "maintain attention and concentration for extended periods," and "respond appropriately to changes in work setting."[14] Garcia maintains that this matter should be remanded for further consideration of the occupational therapy evaluation, especially as it relates to her RFC assessment.

When an ALJ determines that a claimant is not disabled, he or she concludes that the claimant retains the residual functional capacity to perform a significant number of other jobs in the national economy that are consistent with claimant's impairments and

---

[13] *Id.* at 251.

[14] *See* Plaintiff's Brief (docket number 10) at 20.

vocational factors such as age, education, and work experience. *Beckley*, 152 F.3d at 1059. The ALJ is responsible for assessing a claimant's RFC, and his or her assessment must be based on all of the relevant evidence. *Guilliams*, 393 F.3d at 803; *see also Roberts v. Apfel*, 222 F.3d 466, 469 (8th Cir. 2000) (same). Relevant evidence for determining a claimant's RFC includes "'medical records, observations of treating physicians and others, and an individual's own description of his [or her] limitations.'" *Lacroix v. Barnhart*, 465 F.3d 881, 887 (8th Cir. 2006) (quoting *Strongson*, 361 F.3d at 1070). While an ALJ must consider all of the relevant evidence when determining a claimant's RFC, "the RFC is ultimately a medical question that must find at least some support in the medical evidence of record." *Casey*, 503 F.3d at 697(citing *Masterson v. Barnhart*, 363 F.3d 731, 738 (8th Cir. 2004)).

The ALJ's RFC assessment stated that Garcia was "limited to simple routine repetitive work with no contact with the public and work at a regular pace."[15] In making its assessment, the ALJ gave great weight to both Dr. Davis and Dr. Garfield. Both doctors opined that Garcia was moderately limited in her ability to: (1) understand and remember detailed instructions, (2) carry out detailed instructions, (3) maintain attention and concentration for extended periods of time, (4) work with others in coordination with or proximity to others without being distracted by them, (5) interact appropriately with the public, (6) accept instructions and respond appropriately to criticism from supervisors, and (7) respond appropriately to changes in the work setting.[16]

The ALJ's RFC assessment limitation "simple routine repetitive work" takes into consideration (1), (2), (3), (4), and (7) of Dr. Davis and Dr. Garfield's limitations. The limitation of "no contact to the public" takes into consideration (4) and (5) of the doctors' limitations. Thus, having reviewed the entire record, the Court finds that the ALJ properly considered Garcia's medical records and observations of treating physicians in making his

---

[15] *See* Administrative Record at 19.

[16] *Id.* at 303-03; *Id.* at 256-57.

RFC assessment for Garcia.[17] *See Lacroix*, 465 F.3d at 887. Furthermore, the Court finds that the ALJ's decision is based on a fully and fairly developed record. *See Cox v. Astrue*, 495 F.3d 614, 618 (8th Cir. 2007) (providing that an ALJ also has a duty to develop the record fully and fairly). Because the ALJ considered the medical evidence as a whole, the Court concludes that the ALJ made a proper RFC determination based on a fully and fairly developed record. *See Guilliams*, 393 F.3d at 803; *Cox*, 495 F.3d at 618. Even if inconsistent conclusions could be drawn on this issue, the Court upholds the conclusions of the ALJ because they are supported by substantial evidence on the record as a whole. *Guilliams*, 393 F.3d at 801.

## VI. CONCLUSION

The Court finds that the ALJ Garcia properly considered Garcia's impairments under Listing 12.05C. The Court also finds that the ALJ properly considered the opinions of Karl Holmes, a physician's assistant who treated Garcia. Lastly, the Court finds that the ALJ made a proper RFC assessment for Garcia. Accordingly, the Court determines that the ALJ's decision is supported by substantial evidence and shall be affirmed.

## VII. ORDER

For the foregoing reasons, it is hereby **ORDERED**:

1. The final decision of the Commissioner of Social Security is **AFFIRMED**;
2. Plaintiff's Complaint (docket number 3) is **DISMISSED** with prejudice; and
3. The Clerk of Court is directed to enter judgment accordingly.

DATED this 21st day of November, 2011.

JON STUART SCOLES
UNITED STATES MAGISTRATE JUDGE
NORTHERN DISTRICT OF IOWA

---

[17] *See* Administrative Record at 19-22 (providing thorough discussion of the relevant evidence for making a proper RFC determination).